*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 08, 2026
12:12 PM

Plaintiff-Appellee,

v

No. 370241
Wayne Circuit Court
LC No. 22-001329-01-FC

BRENTON MICHAEL THORNTON,

Defendant-Appellant.

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

No. 370474
Wayne Circuit Court
LC No. 21-001067-01-FC

BRENTON MICHAEL THORNTON,

Defendant-Appellant.

Before: RICK, P.J., and YATES and MARIANI, JJ.

PER CURIAM.

In these consolidated appeals,[1] defendant appeals by right his jury-trial convictions of four counts of first-degree criminal sexual conduct, MCL 750.520b(1)(b)(*ii*) (sexual penetration of victim between 13 and 16 years old and related to defendant); two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(b)(*ii*) (sexual contact with victim between 13 and 16 years old and related to defendant); and one count of third-degree criminal sexual

---

[1] *People v Thornton*, unpublished order of the Court of Appeals, entered July 3, 2024 (Docket Nos. 370241; 370474).

conduct (CSC-III), MCL 750.520d(1)(d) (sexual penetration of victim related to defendant). The trial court sentenced defendant to concurrent terms of imprisonment of 12 to 24 years for each CSC-I conviction and 7 to 15 years for each CSC-II and CSC-III conviction. We affirm.

## I. BACKGROUND

Defendant's convictions arose from his sexual abuse of his niece, MS, from approximately 2016 to 2020, in both Detroit and Westland, when MS was between 13 and 16 years old.[2] At trial, MS testified that she and defendant shared a close relationship and that their intimate relationship began on a family trip to Washington, D.C., when defendant kissed her for the first time. MS was 13 years old when the sexual abuse began. MS's testimony included detailed descriptions of sexual abuse in which defendant digitally and orally penetrated her vagina. MS also testified that at some point during their relationship, defendant gave her a vibrator belonging to his wife,[3] which defendant used on MS during their subsequent sexual encounters.

According to the testimony of MS and several of her family members, MS disclosed the sexual abuse in November 2020. Defendant's wife testified that she confronted defendant multiple times about MS's sexual-abuse allegations immediately after she learned of them. She further testified that during those confrontations, defendant admitted to kissing and inappropriately touching MS on multiple occasions but claimed that MS had manipulated him into doing so. Four photos from defendant's cell phone obtained pursuant to a search warrant were also admitted at trial, one of which depicted MS and defendant sitting together in defendant's bed while MS was asleep, one of which depicted MS sitting on a bed by herself, and two of which depicted MS lying in the bed of her cousin (the son of defendant) in defendant's home.

Defendant was convicted and sentenced as described. These appeals followed.

---

[2] Defendant was initially charged for his sexual abuse of MS in two separate cases—one relating to instances of sexual abuse that occurred while he lived in Detroit, and the other relating to instances of sexual abuse that occurred while he lived in Westland. In June 2022, the prosecution moved to join defendant's two cases under MCR 6.120(B)(1), arguing that the charged offenses were part of a years-long "systematic and continuous pattern of sexual abuse" by defendant and therefore "related" within the meaning of the court rule. The trial court granted the prosecution's motion, and the two cases were tried together at a single jury trial.

[3] The vibrator was admitted as evidence at trial through MS's testimony, and defendant's wife later identified it as belonging to her during her testimony. She also testified that she did not recall seeing the vibrator after the time that defendant reportedly gave it to MS and that, when confronted, defendant admitted to her that he had given it to MS.

## II. SEARCH WARRANT

On appeal, defendant argues in his supplemental Standard 4 brief[4] that the contents of his cell phone were inadmissible because the search warrant authorizing the police to search that device did not satisfy the particularity requirement of the Fourth Amendment. Because defendant did not file a motion to suppress the evidence obtained as a result of the allegedly invalid search, this issue is unpreserved. See *People v Unger*, 278 Mich App 210, 243; 749 NW2d 272 (2008). Unpreserved claims of error are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To obtain appellate relief under the plain-error standard, the defendant must show: (1) an error occurred, (2) the error was clear or obvious, and (3) the error affected substantial rights. *Id*. at 763. To satisfy the third element, the defendant generally must show that the error "affected the outcome of the lower court proceedings." *Id*. And even when these three requirements are met, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Allen*, 507 Mich 597, 614; 968 NW2d 532 (2021) (quotation marks and citation omitted).

The search warrant challenged by defendant provided that the police sought to search, in relevant part, the contents of two cell phones belonging to defendant. The warrant provided that "[t]he PROPERTY to be searched for and seized" was "specifically described as . . . [a]ny and all records, documents*, and communications, i.e., calls, messages, and other data, pertaining to the defendant's suspected violation of" the charged offenses. The warrant further provided:

> *As used above, the terms records or documents includes records or documents which were created, modified or stored in electronic or magnetic form and any data, image, or information that is capable of being read or interpreted by a computer or cellular telephone. In order to search for any items, searching agents may seize and search the following:
>
> 1. Any documentation, operating logs and instruction manuals relating to the operation of the cellular telephone hardware and software to be searched;
>
> 2. Application software, utility programs, compilers, interpreters, and other programs or software used to facilitate direct or indirect communication with the cellular telephone hardware and software to be searched;
>
> 3. Any physical keys, encryption devices and similar physical items that are necessary to gain access to the cellular telephone to be searched or are necessary to gain access to the programs, data, and information contained on the cellular telephone to be searched;

---

[4] In addition to filing an appellate brief with the assistance of counsel, defendant filed a supplemental Standard 4 brief pursuant to Michigan Supreme Court Administrative Order No. 2004-6, 471 Mich c, cii (2004).

4. Any passwords, password files, test keys, encryption codes or other cellular telephone codes necessary to access the cellular telephone to be searched or to convert any data, file or information on the cellular telephone into a readable form;

5. Electronically stored communications or messages, including any of the items to be found in electronic mail ("e-mail") or short message service ("SMS messages" or sometimes referred to as "Text Messages").

Recently, in *People v Carson*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 166923); slip op at 1, 17-19, 24, our Supreme Court held that a warrant containing nearly identical language was "insufficiently particular" and therefore constitutionally invalid. In doing so, the Court noted that "the Fourth Amendment's particularity requirement . . . mandates that a warrant '*particularly* describe the place to be searched, and the persons or things to be seized[,]' US Const, Am IV (emphasis added)," and "appl[ies] with equal force to the digital contents of a cell phone." *Id*. at ___; slip op at 10-11, 16 (quotation marks, citation, and alteration omitted). The Court stated that "a practical reading" of the search warrant, "which allow[ed] a search for 'any and all data' " on the defendant's cell phone, "would [not] sufficiently inform an executing officer how to reasonably conduct a limited and constitutionally particular search." *Id*. at ___; slip op at 18. The Court emphasized that the warrant's "authorization to search every nook and cranny of the [defendant's] cell-phone data" for anything related to the charged offenses very well "might uncover incriminating evidence," but it "provide[d] no meaningful constraint" on the search that was "sufficient to satisfy the particularity requirement." *Id*. at ___; slip op at 18-19.

Given that the search warrant challenged in this case is virtually indistinguishable from the search warrant our Supreme Court concluded was invalid in *Carson*, we see no reason to conclude any differently here. And because we conclude that the search warrant in this case was constitutionally invalid, we further conclude that the photos of MS, which were obtained during the invalid search of defendant's cell phones, were erroneously admitted as substantive evidence at trial. See *People v Hellstrom*, 264 Mich App 187, 193; 690 NW2d 293 (2004).

Despite this error, however, defendant is not entitled to relief on this issue because he has failed to show that the error affected his substantial rights. See *Allen*, 507 Mich at 614. The photos were fairly innocuous in nature, in that they did not depict anything overtly sexual with regard to MS. And even absent admission of the photos, there was ample evidence demonstrating defendant's guilt. MS testified at length (and in great detail) about the multiple sexual acts between her and defendant, which began when MS was 13 years old and included sexual contact, digital penetration, and oral penetration. MS also testified that defendant had given her a vibrator belonging to his wife when she attempted to end their sexual relationship, which defendant used on her during their subsequent sexual encounters, and the vibrator was admitted as evidence. Defendant's wife also testified that defendant admitted to her that he had given her vibrator to MS and that he had kissed and inappropriately touched MS more than once. This testimony and evidence, irrespective of the photos, was more than enough for a jury to conclude that defendant was guilty of the charged offenses beyond a reasonable doubt, and defendant has not shown that

the photos' erroneous admission affected the outcome of his trial. Accordingly, defendant has not demonstrated entitlement to relief on this issue. See *id*.[5]

## III. OTHER-ACTS EVIDENCE

Defendant next argues in his Standard 4 brief that the prosecution was erroneously permitted to admit other-acts evidence at trial without first notifying him—under either MCL 768.27b(2) or MRE 404(b)(3)—of its intent to do so.[6] This argument, however, is belied by the record. In August 2021, the prosecution filed a notice of intent to use other-acts evidence under MCL 768.27b and MRE 404(b) in Lower Court Case No. 21-001067-01-FC, which pertained to defendant's sexual abuse of the victim in Westland. In that notice of intent, the prosecution asserted that defendant's other acts of sexual abuse of MS that occurred in Detroit from 2016 to 2018 should be admitted as evidence at trial for his sexual abuse of MS in Westland. The prosecution's notice of intent was subsequently addressed on the record at a pretrial hearing in September 2021, at which defendant and his counsel were present. Defendant's trial did not begin until January 2024, which was nearly two and a half years after the prosecution filed its notice of intent. The record thus clearly reflects that defendant received both written and oral notice of the prosecution's intent to use this other-acts evidence at trial well before the time required by statute

---

[5] Defendant also challenges the admissibility of the photos on MRE 403 grounds, arguing that the probative value of the photos was substantially outweighed by a danger of unfair prejudice. Even assuming this argument had any merit, our conclusion discussed above—i.e., that defendant is not entitled to relief despite the erroneous admission of the photos at trial because he has not shown that that error affected his substantial rights—applies equally to this admissibility challenge.

Also unavailing is defendant's corresponding ineffective-assistance claim. In *Carson*, ___ Mich at ___; slip op at 27, 29-31, our Supreme Court concluded that although the defendant's messages admitted at trial were the result of an invalid search warrant, defense counsel was not ineffective for failing to seek exclusion of that evidence because "Fourth Amendment principles in the cell-phone and digital-data sphere is an area of the law that continues to rapidly evolve" and counsel's decision not to seek exclusion "was not based on a misunderstanding of the law as it existed at the time and may be fairly characterized as an exercise of reasonable professional judgment under the facts and circumstances that existed when the decision was made." Given that counsel in this case was in the same position as counsel in *Carson*, we see no reason to conclude otherwise here.

[6] Although defendant argues that the prosecution failed to provide proper notice of its intent to introduce other-acts evidence under either MCL 768.27b(2) or MRE 404(b)(3), because the other-acts evidence related to his prior sexual abuse of the victim, it plainly fell within the scope of MCL 768.27b. See MCL 768.27b(1) (providing for the admission of other-acts evidence relating to domestic violence or sexual assault "for any purpose for which it is relevant" so long as "it is not otherwise excluded under [MRE] 403"); see also *People v Murray*, 341 Mich App 205, 210; 989 NW2d 284 (2022), vacated in part on other grounds by 510 Mich 946 (2022) (recognizing that "MCL 768.27b governs the admissibility of other-acts evidence regarding domestic violence or sexual assault committed by a defendant when that defendant is charged with domestic violence or sexual assault"). In any event, as explained below, the prosecution satisfied the notice requirements of both MCL 768.27b(2) and MRE 404(b)(3).

-5-

or by court rule. See MCL 768.27b(2) (providing, in relevant part, that the prosecution must give notice to the defendant regarding the evidence that it intends to introduce under the statute "not less than 15 days before the scheduled date of trial"); MRE 404(b)(3)(C) (providing, in relevant part, that the prosecution must provide written notice "at least 14 days before trial").[7] Accordingly, defendant is not entitled to relief on this issue.

## IV. ADMISSION OF WITNESS TESTIMONY

Defendant next challenges testimony by MS's father regarding a statement the father allegedly overheard defendant make during a phone conversation between the father and MS's grandfather. According to defendant, this testimony "constituted a damaging irregularity of such magnitude that it deprived [him] of a fair and impartial trial" and therefore warranted a mistrial. Because defendant did not move for a mistrial on this basis in the trial court, the issue is unpreserved and thus reviewed for plain error affecting substantial rights. See *People v Haynes*, 338 Mich App 392, 410; 980 NW2d 66 (2021).

At trial, MS's father testified that a few days after MS disclosed defendant's sexual abuse, he spoke to MS's grandfather on the phone about the situation. Both the grandfather and defendant were in the grandfather's home at the time of the conversation. MS's father testified that during that phone conversation, he heard defendant in the background yell to him, "I'm sorry," and "forgive me." Defense counsel immediately objected on hearsay grounds, at which point the jury was escorted out of the courtroom so that the trial court could consider the objection outside the jury's presence. Following the parties' arguments on the matter, the court concluded that it was "not going to allow" the testimony regarding defendant's alleged statement to be admitted as evidence because "it's too far of a stretch" and "things [we]re clearly pretty muddy with this particular situation" given that it was "something that [wa]s going on in the background on the other end of a phone call" that defendant was not a party to. The court then brought the jury back into the courtroom and the prosecution continued with a different line of questioning.

As noted, defendant argues on appeal that the testimony by MS's father regarding defendant's alleged statement was an irregularity warranting a mistrial. According to defendant, a mistrial was warranted because the statement "was clearly a damaging" one, as it "practically amounted to a confession of doing something wrong." But a "trial court should only grant a mistrial for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to receive a fair trial and when the prejudicial effect of the error cannot be removed in any other way." *People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014) (quotation marks and citations omitted). And here, beyond asserting that "[t]his was clearly a damaging statement" that "irreparably damaged" his "constitutional right to a fair and impartial jury trial," defendant fails to

---

[7] Furthermore, as noted above, the prosecution moved to consolidate defendant's cases under MCR 6.120(B)(1) due to the relatedness of the underlying offenses. After the cases were consolidated, it was no longer necessary for the parties to further address the prosecution's notice of intent to introduce evidence of other acts of sexual abuse because the prosecution was necessarily required to introduce that evidence as part of its case-in-chief for each of the charged offenses rather than as uncharged other-acts evidence.

explain how the statement rose to the level of warranting a mistrial in the first instance—i.e., how the alleged irregularity prejudiced his rights and how the prejudicial effect of that error could not have been removed in any other way. See *id*.; see also *Carines*, 460 Mich at 763 (providing that the burden is on a defendant to demonstrate that a plain error affected his or her substantial rights).

Nor is such prejudice apparent from the record. The reference to defendant's alleged statement by MS's father was fleeting and immediately objected to by defense counsel. Upon counsel's objection, the trial court removed the jury from the courtroom so that the parties could further address the admissibility of the statement outside the purview of the jury. Nothing in the record demonstrates that the prosecution intentionally presented inadmissible evidence to the jury or otherwise emphasized the statement at any other point during trial. See, e.g., *Lane*, 308 Mich App at 60 (stating that when determining whether a mistrial is appropriate, the court "may consider, among other things, whether the prosecutor intentionally presented the information to the jury or emphasized the information"). Rather, the record demonstrates that the prosecution immediately stopped questioning the witness upon defense counsel's objection, moved on with its line of questioning after the jury returned to the courtroom, and never again referenced the alleged statement at issue. Furthermore, the statement was cumulative of other witness testimony, including that of defendant's wife, who testified that when she confronted defendant about MS's sexual-abuse allegations, defendant admitted to inappropriately kissing and touching MS on more than one occasion and stated "that he was sorry and that it was a mistake."

In sum, the record indicates that any prejudice from the challenged statement was minimal and could have been further alleviated by a curative instruction to the jury if defendant had made such a request. See *id*.; see also, e.g., *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008). Such circumstances belie defendant's claim that it was necessary for the trial court to declare a mistrial. See *Lane*, 308 Mich App at 60; *Horn*, 279 Mich App at 36. Accordingly, defendant has not demonstrated reversible error on this basis. See *Allen*, 507 Mich at 614; *Carines*, 460 Mich at 763-764.

## V. COMPLAINANT AS "VICTIM"

Defendant, in his Standard 4 brief, next challenges the trial court's use of the term "victim" during its preliminary jury instructions and the prosecution's use of that term during its opening statement.[8] Because defendant did not object to the court's jury instructions on this ground, this

---

[8] Defendant also appears to take passing issue with his trial counsel's use of that term during counsel's opening statement, noting that he "was exposed to this same behavior from his own defense attorney." Defendant, however, does not make an ineffective-assistance claim in this regard or otherwise provide any meaningful argument regarding the matter. A party may not simply announce his position and expect this Court "to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *People v Burkett*, 337 Mich App 631, 639 n 4; 976 NW2d 864 (2021) (quotation marks and citation omitted). In any event, for many of the same reasons discussed in this section, any claim in this regard would not have apparent merit. Defendant has not shown how his counsel's two passing references to MS as the "victim" during his opening

issue is unpreserved and thus reviewed for plain error affecting substantial rights. See *People v Czuprynski*, 325 Mich App 449, 466-467; 926 NW2d 282 (2018). Defendant's prosecutorial-misconduct claim is also unpreserved and thus reviewed for plain error affecting substantial rights, as defendant failed to contemporaneously object to the alleged instance of misconduct and request a curative instruction. See *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).

During jury selection at the outset of the proceedings, the trial court read aloud the felony informations from defendant's cases to inform everyone of the alleged criminal offenses for which defendant was on trial. Each of the seven alleged CSC offenses in those informations referred to "the victim" in their descriptions, and so the court ultimately used the term "victim" each time it read the description of a charged offense.[9] After reading the informations aloud,[10] the court immediately told the jurors that they "should clearly understand that the [i]nformations [it] just read [we]re not evidence" and that "[a]n [i]nformation is read in every criminal trial so that the Defendant and jury can hear the charges." The court also informed the jurors that defendant had pleaded not guilty to the charges it read aloud from the felony informations and instructed them that they "must not think [the informations were] evidence of [defendant's] guilt or that [defendant] must be guilty because he has been charged."

After both parties indicated that they were satisfied with the trial court's instructions, the prosecution began its opening statement. At the outset, the prosecution stated, "[MS] is the victim in this case." The prosecution only used the term "victim" one other time during its opening statement—when it reminded the jurors that "what [they] hear from testifying witnesses, including "[MS], the victim," was evidence to be considered when determining whether it had sufficiently proven the necessary elements of each charged offense. During both its preliminary and final jury instructions, the court instructed the jury that neither the court's "comments, rulings, questions and instructions" nor the attorneys' statements and arguments were evidence. The court also instructed the jury that it must presume defendant was innocent of the charged offenses and render a verdict

---

statement amounted to a constitutionally deficient performance or how it was reasonably probable that any such deficiency was outcome determinative. See *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016).

[9] For instance, when reading count III as described in the felony information related to defendant's sexual abuse of MS in Detroit, the court stated, "Count III alleges the Defendant did engage in sexual contact with a child who was at least thirteen, but less than sixteen years of age and the Defendant was related to the victim by blood or [aff]inity to the fourth degree."

[10] This was the first and only time that the court used the term "victim" to refer to MS in the jury's presence. Subsequently, both in its preliminary jury instructions and in its final jury instructions, the court specifically used MS's name rather than the term "victim" when explaining the elements of each charged offense that the prosecution was required to prove beyond a reasonable doubt. So, for instance, while the court said that defendant "was related to the victim by blood or [aff]inity" when reading directly from the felony information, the court thereafter said in its instructions "that [MS] [wa]s related to" defendant "by blood or by marriage as . . . [d]efendant's niece."

of not guilty unless it was satisfied that the prosecution had proven every element of the charged offenses beyond a reasonable doubt.

On appeal, defendant asserts that the trial court's and the prosecution's use of the term "victim" at the outset of the proceedings denied him a fair trial because it put him at "an unfair disadvantage" before any evidence was ever presented. But our caselaw "makes clear that the use of the term 'victim' is not deemed to be reversible error when . . . 'use of that term could not have suggested anything to the jury of which it was not already aware.' " *People v Rohm*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369338); slip op at 5, quoting *People v Wisniewski*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 361978); slip op at 18; see also *People v Aikens*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 368187); slip op at 3. And here, as detailed above, the jury was promptly made aware by the trial court's comments and preliminary instructions during jury selection that MS was an "alleged victim," in that she was the subject of the seven "alleged" CSC offenses for which defendant was on trial. The jury was also aware, based on the court's preliminary instructions, that the informations referring to MS as the "victim" were not evidence and could not be treated as evidence of defendant's guilt, and that it could not believe defendant was guilty simply because he had been charged with the offenses alleged in the informations. Additionally, per the court's preliminary and final instructions, the jury was aware that neither the court's nor the attorneys' statements were evidence. Accordingly, there was no reversible error with respect to the trial court's or the prosecution's use of the term "victim" at the outset of this case. See *Rohm*, ___ Mich App at ___; slip op at 5; *Aikens*, ___ Mich App at ___; slip op at 3; *Wisniewski*, ___ Mich App at ___; slip op at 17-19.[11]

## VI. SENTENCING CHALLENGES

Defendant also raises several sentencing-related challenges on appeal. In his Standard 4 brief, defendant challenges his presentence investigation report (PSIR) on timeliness and accuracy grounds. In his brief filed by counsel, defendant challenges the trial court's modification of his judgments of sentence (JOS) to include lifetime electronic monitoring (LEM), arguing that the court did not have authority to do so. Because defendant did not raise any of these issues at

---

[11] In raising his unpreserved prosecutorial-misconduct claim, defendant also briefly argues that the prosecution impermissibly vouched for MS's credibility by asking MS on direct examination whether she was "telling the truth" during her forensic interview and by instructing the jurors during its opening statement to "ask yourself who is telling the truth." But defendant does not provide any meaningful argument or identify any legal support for this claim. See *Burkett*, 337 Mich App at 639 n 4. Nor does the claim have apparent merit. To start, defendant misrepresents what the prosecution stated during its opening statement, as the record clearly reflects that the prosecution stated, "[P]ay close attention . . . and ask yourself *how that helps you determine* who is telling the truth." (Emphasis added.) Regardless, neither of the isolated statements identified by defendant suggests that the prosecution "ha[d] some special knowledge" concerning MS's truthfulness, and even if the statements amounted to error, an immediate curative instruction would have been sufficient to cure it, had defendant contemporaneously objected. See *People v Roscoe*, 303 Mich App 633, 649; 846 NW2d 402 (2014).

-9-

sentencing, in a motion for resentencing, or in a motion to remand for resentencing, they are all unpreserved and thus reviewed for plain error affecting substantial rights. See MCR 6.429(C); *People v Clark*, 315 Mich App 219, 223-224; 888 NW2d 309 (2016). The underlying questions of whether defendant was timely provided the PSIR and whether the court had authority to modify defendant's JOS, however, are matters of interpretation of our statutes and court rules, which we review de novo. See *id*. at 224; see also *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018).

## A. CHALLENGES TO PSIR

As noted, defendant raises two distinct challenges to his PSIR. Neither has merit.

### 1. TIMELINESS

Defendant first argues that his receipt of his PSIR was untimely under MCR 6.425(B) because he should have received a copy of it five days before sentencing but instead only received it "30 minutes before sentencing." To start, defendant incorrectly states that he was to receive a copy of the PSIR five days before his sentencing hearing. Although a defendant must be provided with a copy of the PSIR prior to sentencing, that need only occur "at a reasonable time, *but not less than two business days*, before the day of sentencing." MCR 6.425(B) (emphasis added); see also MCL 771.14(5) and (7). In any event, the record clearly reflects that defendant received a copy of the PSIR in a timely manner. Indeed, the register of actions indicates that a copy of the PSIR was filed one week before defendant's scheduled sentencing hearing, and the proof of service filed alongside the PSIR indicates that a copy of the PSIR was provided to the trial court, the prosecution, and defense counsel.

Given the substance of defendant's timeliness argument in his Standard 4 brief, it is apparent that defendant takes issue with the fact that he was not *personally* provided a copy of the PSIR until immediately before sentencing. But neither statute nor court rule requires that a defendant be personally provided with a copy of the PSIR when he or she is represented by counsel. MCL 771.14(7) (providing, in relevant part, that a PSIR must be provided to "the defendant's attorney *or the defendant if he or she is not represented by an attorney*") (emphasis added); MCR 6.425(B) (same); see also, e.g., *People v Jansson*, 116 Mich App 674, 698-699; 323 NW2d 508 (1982). Here, it is undisputed that defendant was represented by counsel throughout the proceedings. Thus, pursuant to MCL 771.14(7) and MCR 6.425(B), only defense counsel was required to be provided a physical copy of the PSIR at least two days before sentencing. And, as discussed, the record makes clear that a copy of the PSIR was provided to defense counsel one week before the sentencing hearing, thereby satisfying the time requirements of MCL 771.14(7) and MCR 6.425(B). Accordingly, defendant is not entitled to relief on this basis.

### 2. ACCURACY

Defendant also argues that the PSIR contained inaccurate information and that he was improperly sentenced on the basis of inaccurate information. This challenge is twofold. Defendant first asserts that the PSIR contained inaccuracies and that he was not afforded an adequate opportunity to review the PSIR for those inaccuracies. Second, defendant asserts that the trial court based its sentencing decision on information wholly unsupported by evidence.

To satisfy due process, a defendant must be given an opportunity to review and challenge the contents of the PSIR before sentencing to ensure that its contents are accurate. *Morales v Mich Parole Bd*, 260 Mich App 29, 46; 676 NW2d 221 (2003); *People v Zinn*, 217 Mich App 340, 348-349; 551 NW2d 704 (1996); see also MCL 771.14(5)-(6); MCR 6.425(D)(1)(a)-(b) and (2). "When a defendant challenges the accuracy of the information, the defendant bears the burden of going forward with an effective challenge." *People v Lloyd*, 284 Mich App 703, 705; 774 NW2d 347 (2009). Absent a defendant's effective challenge to the accuracy of the information contained in the PSIR, the information is presumed accurate and the trial court is permitted to rely on it at sentencing. *People v Grant*, 455 Mich 221, 233-234; 565 NW2d 389, 395 (1997).

Defendant first argues that the PSIR contained inaccuracies and that he was not afforded a meaningful opportunity to review the PSIR for those inaccuracies, as he had only received the PSIR "30 minutes before sentencing." We disagree. As discussed above, defense counsel received a copy of the PSIR one week before the sentencing hearing in accordance with the relevant statute and court rule. Additionally, defense counsel confirmed on the record at the sentencing hearing that he and defendant had an adequate opportunity to review—and had, in fact, reviewed—the PSIR together prior to sentencing. Defendant also personally confirmed as much when the trial court directly addressed him shortly thereafter. Defense counsel also did, in fact, challenge information contained in the PSIR per defendant's request, stating at the hearing that "[his] client would like to correct the description of the offense narrative where it lists that [MS] was twelve years old [be]cause at trial she did say . . . she was thirteen years old." After some discussion of this challenge, the court amended that portion of the PSIR to reflect that correction. The court then directly addressed defendant and asked him whether he had any additional "changes, modifications or omissions" to the PSIR "[o]ther than the change [they] just made," to which defendant responded, "Not at this time." And on appeal, despite asserting that there were additional inaccuracies in the PSIR, defendant does not set forth what those other inaccuracies may be or explain how the failure to correct them affected his substantial rights at sentencing. See *Lloyd*, 284 Mich App at 705; see also *Allen*, 507 Mich at 614; *Grant*, 455 Mich at 233-234. Accordingly, defendant has not shown that he is entitled to relief on this basis.

Defendant also argues that the trial court based its sentencing decision on inaccurate information. It appears from the substance of his argument that defendant is under the impression that his sentencing hearing was, in some sense, a "trial," as he primarily asserts that besides the PSIR—whose accuracy, as noted, defendant (unsuccessfully) challenges—there was no other testimony or evidence presented at this "trial" to support the court's factual determinations underlying its sentencing decision. But it is well established that "a sentencing hearing is not a criminal trial" and that "many of the constitutional requirements applicable to criminal trials do not apply at sentencing." *People v Uphaus* (*On Remand*), 278 Mich App 174, 183-184; 748 NW2d 899 (2009).[12] For instance, the rules of evidence do not apply at sentencing hearings. *Id*.; MRE

---

[12] This same misunderstanding seemingly informs, and ultimately undermines, defendant's claim that his counsel was ineffective for failing to call any character witnesses on his behalf at sentencing. See *Uphaus*, 278 Mich App at 183-184; see also MCR 6.425(D)(1)(c)(*i*)-(*ii*) (providing, in relevant part, that a trial court is only required to give the defendant's counsel a

-11-

1101(b)(3). The trial court may also engage in judicial fact-finding based on the entire record before it for purposes of rendering a sentencing decision. *People v McFarlane*, 325 Mich App 507, 535; 926 NW2d 339 (2018), citing *People v Biddles*, 316 Mich App 148, 158-161; 896 NW2d 461 (2016). While this includes information presented at sentencing, the court is by no means limited to that information. See *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015) (noting that "a court may consider *all* record evidence" before it when sentencing a defendant, including, but not limited to, "the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination") (emphasis added). Thus, even though no testimony or evidence was presented at sentencing, the trial court in this case, which also presided over defendant's jury trial, could—and clearly did—rely on "any and all record evidence" available to it when sentencing defendant, including the contents of his PSIR and the testimony and evidence presented at defendant's jury trial. *McFarlane*, 325 Mich App at 535-536. Defendant has not shown any reversible error in the trial court doing so and thus has not demonstrated entitlement to relief on this basis, either.

## B. MODIFICATION OF SENTENCES

As noted, defendant also argues that the trial court did not have the authority to modify his sentences after the original JOS had already been entered to additionally impose LEM, and the court therefore erred by doing so. LEM, however, was required by law because defendant was convicted of four counts of CSC-I, MCL 750.520b(2)(d); see also MCL 750.520n, and the court's omission of this mandatory LEM requirement rendered defendant's sentences invalid, see *People v Pendergrass*, 348 Mich App 81, 85-87; 17 NW3d 425 (2023). MCR 6.429(A) therefore expressly authorized the court to sua sponte correct its erroneous omission of the LEM requirement from defendant's sentence, so long as it did so "within 6 months of the entry of the judgment of conviction and sentence" and "after giving the parties an opportunity to be heard" on the matter. See also *Pendergrass*, 348 Mich App at 86-87.

Here, defendant's original JOS were entered January 31, 2024. The trial court was subsequently made aware by the Michigan Department of Corrections that it had failed to include the LEM requirement in defendant's JOS, and it conducted a hearing on the matter on March 15, 2024. At that hearing, defendant's trial counsel, like defendant's appellate counsel, conceded that LEM was mandated by law due to defendant's CSC-I convictions. The court then entered defendant's amended JOS including the LEM requirement later that day. It is thus clear from the record that the court amended defendant's JOS within six months of entering the original JOS and only after giving both parties an opportunity to address the matter. See MCR 6.429(A). The trial court therefore acted within its authority to sua sponte correct defendant's invalid sentences.

---

chance to speak on his or her behalf and to allow the defendant to "personally . . . speak or present any information to mitigate the sentence"); MCR 6.610(G)(1)(c)(*i*)-(*ii*) (same). And, in any event, defendant has not identified any person who would have been willing to testify as to his character at sentencing, offered any proofs indicating what those individuals may have said, or otherwise demonstrated how it was reasonably probable that any error in this regard affected his sentence. See *Shaw*, 315 Mich App at 672.

-12-

## II. EFFECTIVE ASSISTANCE OF COUNSEL

In both his brief filed by counsel and his Standard 4 brief, defendant argues, on several different bases, that he was denied the effective assistance of counsel. Whether counsel was ineffective presents a mixed question of fact and law, with factual findings reviewed for clear error and questions of law reviewed de novo. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). "The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016). Because defendant did not raise any of his ineffective-assistance claims in a motion for a new trial or *Ginther*[13] hearing in the trial court or in a motion to remand in this Court, our review is limited to errors apparent from the record. *People v Thurmond*, 348 Mich App 715, 740; 20 NW3d 311 (2023).

"To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Shaw*, 315 Mich App at 672. "Reasonable probability means a probability sufficient to undermine confidence in the outcome." *People v Leffew*, 508 Mich 625, 637; 975 NW2d 896 (2022) (quotation marks and citation omitted). This Court presumes counsel was effective, and a defendant carries a heavy burden to overcome that presumption. *People v Muniz*, 343 Mich App 437, 448; 997 NW2d 325 (2022). This burden includes "overcom[ing] the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). That said, "a court cannot insulate the review of counsel's performance by calling it trial strategy; counsel's strategy must be sound, and the decisions as to it objectively reasonable." *People v Ackley*, 497 Mich 381, 388-389; 870 NW2d 858 (2015) (quotation marks and citation omitted). The defendant bears the burden of establishing the factual predicate of his claim. *People v White*, 331 Mich App 144, 148; 951 NW2d 106 (2020).

### A. FAILURE TO OBTAIN WRITTEN ORDER OF CONSOLIDATION

Defendant first argues that his counsel was ineffective for failing to secure a written order reflecting the trial court's oral pronouncement that consolidation of his two cases was appropriate but that separate juries would hear and independently decide the charges in the two cases. We disagree, as the record reflects that the court did not, in fact, rule that the cases would be heard by two separate juries. After the prosecution moved to consolidate defendant's cases, the court conducted a hearing on the matter, at which the court stated that it was "going to grant [the prosecution's] motion." While the court also stated at the motion hearing that it was "suggesting that the parties may be able to work out to get to one trial, two juries, if that can be functionally arrived at," there is nothing in the record to indicate that the court actually ruled to that effect or was prepared to do so at that time. Accordingly, defendant's claim of ineffective assistance on

---

[13] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

this basis fails. See *Head*, 323 Mich App at 539 ("Counsel is not ineffective for failing to advance a meritless position or make a futile motion.") (quotation marks and citation omitted).

## B. FAILURE TO INVESTIGATE

Defendant next argues in his Standard 4 brief that his trial counsel provided ineffective assistance by failing to investigate and adequately prepare for trial. According to defendant, his counsel failed to investigate "further than [MS's] allegations" despite there being "mitigating evidence and other witnesses that could [have] shed light on [MS's allegations] in this case," which left counsel wholly unprepared to try the case. "A defendant is entitled to have his counsel prepare, investigate, and present all substantial defenses." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). When claiming ineffective assistance due to defense counsel's unpreparedness, the defendant must show prejudice resulting from this alleged unpreparedness. *People v Caballero*, 184 Mich App 636, 640, 642; 459 NW2d 80 (1990).

The record in this case does not support defendant's assertion that his trial counsel was unprepared to try the case. To start, defendant has not pointed to anything particular in the record indicating that counsel either expressed or demonstrated that he was unprepared for trial or needed more time to prepare. For instance, defendant asserts that due to an inadequate investigation into other evidence and potential witnesses, counsel was unprepared to impeach the credibility of one of the "key witnesses in the case." But defendant does not identify which of the prosecution's witnesses he is referring to, the substance of the other purportedly mitigating evidence, how that other evidence was relevant and could have been used to impeach that witness, or how successfully impeaching that witness's testimony would have meaningfully benefitted the defense. See *id*. at 641-642 (emphasizing that to prevail on an ineffective-assistance claim based on inadequate preparation, a defendant must show that counsel's "failure[s] resulted in counsel's ignorance of valuable evidence which would have substantially benefits the accused").

Furthermore, having reviewed the record before us, counsel's questions, objections, remarks, and arguments throughout trial demonstrate that he was familiar with the case and had sufficiently prepared for trial. Counsel extensively cross-examined MS about her sexual-abuse allegations against defendant, including about why she waited as long as she did before disclosing the abuse—something that was a focal point of counsel's closing argument and at the heart of the defense's theory that MS fabricated the allegations. Counsel, contrary to defendant's assertions, also objected to (albeit unsuccessfully) and cross-examined defendant's wife on her typed notes from her conversations with defendant about MS's sexual-abuse allegations shortly after MS disclosed them.[14] Although counsel did not cross-examine MS's father about defendant's alleged

---

[14] Defendant also seemingly takes issue with the typed notes of his wife, arguing that he and counsel "had not seen these supposed written notes" until the day of trial and that counsel would have been prepared to attack the veracity of those notes—and therefore would have been prepared to attack the credibility of the witness—had he completed an adequate investigation into other evidence and witnesses before trial. But it is clear from the record that these typed notes were not intended to be, or ever admitted as, evidence at defendant's trial. Rather, the notes were only used

statements during a phone conversation between MS's father and grandfather, the record makes clear that counsel had successfully objected to the admission of those statements during direct examination and therefore had no need to cross-examine MS's father on them.

In sum, defendant has not demonstrated that counsel failed to adequately prepare for trial or that he was prejudiced by counsel's alleged unpreparedness. See *id*. at 640-642. Accordingly, defendant is not entitled to relief on this basis.

## C. FAILURE TO CALL WITNESSES

Defendant next argues in his Standard 4 brief that his trial counsel provided ineffective assistance by failing to call multiple witnesses whose testimony would have provided exculpatory evidence. Defendant, however, bears the burden of establishing the factual predicate of his claim, and he has not done so here. See *White*, 331 Mich App at 148. Defendant asserts that counsel did not call MS's grandmother or "3 other witnesses" at trial, but he has not identified who these three other individuals are. Nor, for that matter, has he made any offers of proof regarding any of these individuals' testimony or shown how any such testimony would have added anything meaningful in favor of the defense. See *id*. The same holds true for MS's grandmother. Although defendant identifies her by name and asserts that she "had information that was vital to the defense" because she was also present during the above-discussed phone conversation between MS's father and grandfather, he has not made any offers of proof demonstrating what her testimony would have been or shown how that testimony would have added anything meaningful to the defense. See *id*. Defendant also admits in his Standard 4 brief that he identified all of these individuals as potential witnesses for the defense while communicating with his counsel prior to trial and that counsel ultimately decided not to call them as witnesses at trial.

Counsel's decisions regarding which, if any, witnesses to call at trial are generally a matter of trial strategy, *Horn*, 279 Mich App at 39, and defendant has offered nothing that might overcome the "strong presumption" that trial counsel's actions and decisions with respect to the potential witnesses at issue were reasonably strategic, see *Ackley*, 497 Mich at 388-389; *Trakhtenberg*, 493 Mich at 52. Nor has defendant offered anything to show that, had counsel called these individuals as witnesses as defendant maintains he should have, it is reasonably probable that the outcome of the trial would have been different. See *Shaw*, 315 Mich App at 372. Accordingly, defendant has not demonstrated entitlement to relief on this basis.

## D. FAILURE TO OBJECT

Finally, defendant argues in his Standard 4 brief that his counsel was ineffective for failing to object to the trial court's preliminary jury instructions regarding the elements of some of the

---

to refresh the witness's memory while testifying at trial. Counsel reviewed the notes prior to the witness being refreshed, the notes were taken back from the witness before questioning resumed, and the notes were not provided to the jury for consideration. And, contrary to defendant's assertion, counsel objected to testimony from defendant's wife regarding defendant's alleged admissions that she had included in those notes, which the trial court ultimately overruled.

offenses and by failing to object to the portions of the prosecution's opening statement referring to the same elements. According to defendant, the court's instructions—and, by extension, the prosecution's comments during its opening statement—amounted to reversible error because they "repeatedly read . . . elements of offenses that [he] was not alleged to have committed"—namely, that he digitally penetrated MS. This claim, however, is belied by the record.

Of the seven CSC charges that defendant faced, four of them—the CSC-III charge and three of the CSC-I charges—were premised on alleged instances of digital penetration of MS by defendant. This was clearly reflected by the felony informations, which the court read aloud at the start of the jury-selection process. Thus, when the court instructed the empaneled jury on the elements to be proven for each of those counts, it was necessarily required to—and did—instruct the jury that, for each of those counts, the prosecution was required to prove beyond a reasonable doubt that defendant digitally penetrated MS's "genital opening." See *Head*, 323 Mich App at 537 (noting, in relevant part, that jury "instructions must include all elements of the charged offenses and any material issues . . . if supported by the evidence") (quotation marks and citation omitted). The prosecution, for its part, simply reiterated during its opening statement that, for those four charges, it was required to prove beyond a reasonable doubt that defendant digitally penetrated MS's "vagina or genital opening" because that was "how it's charged." See *People v Ericksen*, 288 Mich App 192, 200; 793 NW2d 120 (2010) ("Opening statement is the appropriate time to state the facts that will be proved at trial."). And, contrary to defendant's assertion, there was sufficient evidence to support these instructions, as MS detailed several different instances of digital penetration by defendant in both Westland and Detroit during her trial testimony. See *Head*, 323 Mich App at 537.

In sum, the record in this case demonstrates that the trial court properly instructed the jury on the elements of offenses with which defendant was, in fact, charged, and that the prosecution likewise only discussed during its opening statement the necessary elements of offenses with which defendant was charged. Accordingly, defendant has failed to show that counsel was ineffective for failing to object to the trial court's preliminary jury instructions or the prosecution's comments during its opening statement, as doing so would have been futile or meritless. See *id*. at 539.

Affirmed.

/s/ Michelle M. Rick
/s/ Christopher P. Yates
/s/ Philip P. Mariani